DAVID R. WOLTERING, Adm'r of the Estate of Stacey Lee Grace, Deceased, Plaintiff-Appellant, v. OUTBOARD MARINE CORPORATION, Defendant-Appellee.

Fifth District   No. 5—92—0248

Opinion filed June 16, 1993.

Robert H. Gregory, of The Lakin Law Firm, P.C., of Wood River, for appellant.

William A. Schmitt and Mary Sue Juen, both of Thompson & Mitchell, of Belleville, and Richard A. Bowman and Marcia M. Kull, both of Bowman & Brooke, of Minneapolis, Minnesota, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff, David R. Woltering, administrator of the estate of Stacey Lee Grace, deceased, petitioned this court pursuant to Illinois Supreme Court Rule 308 for leave to appeal an order of the circuit court of Madison County granting partial summary judgment to the defendant, Outboard Marine Corporation. We granted the plaintiff's petition for leave to appeal.

This case arises out of an accident which occurred on April 27, 1989. The complaint alleges that Stacey Lee Grace was a passenger on a pleasure craft being operated on the Mississippi River near St. Charles County, Missouri. She was thrown from the boat and apparently struck by the propeller of the outboard motor. This outboard motor was manufactured by the defendant, Outboard Marine Corporation. At the time of her death, Stacey Lee Grace was unmarried and left no surviving children. The next of kin claiming an interest in this litigation are her father and her sister.

Prior to her death, Stacey Lee Grace lived in an apartment in the basement of her parents' home and paid them $100 per month in rent. Neither her father nor sister was financially dependent upon the decedent. They have, however, claimed damages due to their loss of companionship, guidance, advice, love, and affection for the decedent.

We are confronted with two issues in this case. First, we must decide whether Federal admiralty law or State substantive law applies. Second, regardless of whether Federal admiralty law applies or State law applies, we must determine the correct measure of damages given the facts of this case.

A trilogy of United States Supreme Court cases provides guidance in determining whether this case as pleaded arises under Federal admiralty law or under State products liability law. The United States Supreme Court in *Executive Jet Aviation, Inc. v.*

*City of Cleveland* (1972), 409 U.S. 249, 34 L. Ed. 2d 454, 93 S. Ct. 493, established a two-part test for determining whether a case falls within the admiralty law jurisdiction. The Supreme Court held that it first must be ascertained whether the tortious wrong occurred on navigable waters. If, in fact, the alleged wrong occurred on navigable waters, then the court must determine whether there is a significant relationship between the wrong and traditional maritime activity.

In *Foremost Insurance Co. v. Richardson* (1982), 457 U.S. 668, 73 L. Ed. 2d 300, 102 S. Ct. 2654, the Supreme Court reiterated the previously stated rule. It emphasized that admiralty jurisdiction is limited by the requirement that the wrong must bear a significant relationship to traditional maritime activity. The Court held that the collision of two pleasure boats on navigable waters because of negligent operation did constitute a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction. The Supreme Court recognized that, although the primary focus of admiralty jurisdiction is the protection of maritime commerce, all vessel operators must be subject to uniform rules of conduct on navigable waters. To ignore this fact would ignore the potential impact of noncommercial maritime activity on maritime commerce. *Foremost*, 457 U.S. at 674-75, 73 L. Ed. 2d at 305-06, 102 S. Ct. at 2658.

The final case in the trilogy is *Sisson v. Ruby* (1990), 497 U.S. 358, 111 L. Ed. 2d 292, 110 S. Ct. 2892. In *Sisson*, a fire broke out aboard a yacht docked at a marina. The yacht was destroyed along with several neighboring vessels and the marina. The fire itself apparently started in the area of a washer/dryer unit. The Supreme Court was confronted with the question of whether Federal admiralty jurisdiction could be invoked under those facts. The Court found that admiralty jurisdiction was present despite the fact that no commercial vessels were involved. The Court reasoned that a fire has a "potentially disruptive impact on maritime commerce" because of the potential of it spreading to commercial vessels and because the damage to the marina could make it inaccessible to commercial vessels. (*Sisson*, 497 U.S. at 363, 111 L. Ed. 2d at 299-300, 110 S. Ct. at 2896.) Therefore, the Court held that since both the locality test, that is, an alleged wrong occurring on navigable waters, and the nexus test, a substantial relationship to traditional maritime activities, were satisfied, Federal admiralty jurisdiction was proper.

We must now apply these rules to the facts of this case. We have considered the authorities cited by the parties and conclude that Federal admiralty law does not apply in this case.

We do not reach this conclusion because of the absence of an allegation of negligent navigation. As the defendant correctly points out, a claim of improper navigation is only one factor to consider in determining whether admiralty jurisdiction is present. *Sisson* is an excellent example of a case where there is no allegation of improper navigation and yet admiralty jurisdiction was found to exist.

■ Rather, we reach the conclusion that this case does not fall within the admiralty jurisdiction because there is an insufficient relationship to traditional maritime activity. In *Delta Country Ventures, Inc. v. Magana* (9th Cir. 1993), 986 F.2d 1260, the plaintiff dove from the deck of a houseboat and struck something underwater, sustaining serious injuries. The boat had been leased for recreational use, and the plaintiff was on the boat as a guest. One of the issues in the case was whether the admiralty jurisdiction of the court was implicated. The United States Court of Appeals for the Ninth Circuit stated:

> "In *Sisson*, the Supreme Court stated that 'protecting commercial shipping is at the heart of admiralty jurisdiction' and '[n]ot every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction.' [Citation.] The Court then set forth a two-step inquiry for determining whether jurisdiction exists: First, we 'assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.' [Citation.] Second, we ask whether the party seeking to invoke maritime jurisdiction has shown 'a substantial relationship between the activity giving rise to the incident and traditional maritime activity.' [Citation.]" 986 F.2d at 1262.

Applying this test, the court in *Magana* defined the relevant activity as "aquatic recreation off a pleasure boat." The court concluded that "aquatic recreation off a pleasure boat" was not sufficiently related to traditional maritime activity to support admiralty jurisdiction.

Similarly, in the instant case we must define the activity taking place at the time of the injury, and we hold that the relevant activity giving rise to the incident was aquatic recreation involving a pleasure boat.

A decision closely paralleling the facts of this case is *Kunreuther v. Outboard Marine Corp.* (E.D. Pa. 1989), 715 F. Supp. 1304. In the *Kunreuther* case, plaintiff's decedent was snorkeling in Jamaican waters when she was struck by a propeller from an Evinrude outboard motor. The plaintiff alleged that the outboard motor should have been equipped with a propeller guard. The identical allegation is made by the plaintiff in this case. The United States District Court, after analyzing the law of admiralty jurisdiction, concluded that under the facts of that case admiralty jurisdiction did not lie.

The Federal district court later withdrew this decision and concluded that the Death on the High Seas Act (Act) (46 U.S.C.A. §761 *et seq.* (West 1975 & Supp. 1993)) must be applied. However, the court did not retreat from its prior ruling that in the absence of the Act Federal admiralty law should not apply. (*Kunreuther v. Outboard Marine Corp.* (E.D. Pa. 1991), 757 F. Supp. 633.) In this case, there is no claim that the Act is involved.

■ We reach the same conclusion as the courts in *Magana* and *Kunreuther*. Admiralty law does not apply in this case. Rather, Illinois law applies. We reach this conclusion because only the locality test has been met. The second prong of the two-part jurisdictional test, a *significant* relationship to *traditional* maritime activity, has not been satisfied. *Magana*, 986 F.2d at 1262.

The defendant has cited several cases that at first blush seem to conflict with *Magana* and *Kunreuther*. However, nearly all of the authorities cited involved a collision between vessels or some other form of negligent navigation. While negligent navigation is not necessary to invoke admiralty jurisdiction, its presence strongly suggests the propriety of applying admiralty law. (*Foremost*, 457 U.S. at 675 n.5, 73 L. Ed. 2d at 306 n.5, 102 S. Ct. at 2658 n.5.) In this case, the record is devoid of any evidence that negligent navigation played a role in the accident.

■ Given the fact that we have concluded that Illinois law applies to this case, we must now determine whether loss of society damages are recoverable. It is clear that loss of society damages for the death of an adult child are recoverable. (See *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 120, 499 N.E.2d 1373.) The Illinois Supreme Court has stated that Illinois law recognizes that pecuniary losses encompass loss-of-society damages for many facets of family relationships. (*Seef v. Sutkus* (1991), 145 Ill. 2d 336, 338, 583 N.E.2d 510, 511.) Recently, the Illinois Supreme Court recognized that a proven loss of a sibling's society is a pecuniary injury for

which siblings can recover under the wrongful death statute. (*In re Estate of Finley* (1992), 151 Ill. 2d 95, 103, 601 N.E.2d 699, 702.) Therefore, siblings may recover for loss of society of a deceased brother or sister, but such damages must be proven. (*Finley*, 151 Ill. 2d at 106, 601 N.E.2d at 699.) We find that loss-of-society damages are recoverable in this case.

Accordingly, the partial summary judgment entered by the circuit court of Madison County is hereby reversed, and the cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

GOLDENHERSH and LEWIS, JJ., concur.